Trista Auman, a minor, by her guardians, Kevin Auman and Rhonda Auman, and Kevin Auman and Rhonda Auman, in their individual capacity, Plaintiffs-Appellants,

v.

School District of Stanley-Boyd, Employers Mutual Casualty Co., Security Life Insurance Company of America and Clark County, Defendants-Respondents.

Supreme Court

No. 00–2356–FT. Oral argument October 2, 2001.—Decided November 27, 2001.

2001 WI 125

(Also reported in 635 N.W.2d 762.)

551

For the plaintiffs-appellants there were briefs by *Ann N. Knox-Bauer* and *Salm & Knox-Bauer*, Stanley, and oral argument by *Ann N. Knox-Bauer.*

For the defendants-respondents there was a brief by *Joel L. Aberg, Thomas J. Graham, Jr.*, and *Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire, and oral argument by *Joel L. Aberg.*

An amicus curiae brief was filed by *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This case comes before this court on certification by the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000).[1] The Circuit Court for Chippewa County, Roderick A. Cameron, Circuit Court Judge, granted summary judgment to the School District of Stanley-Boyd, Employers Mutual Casualty Company, Security Life Insurance Company of America, and Clark County (collectively, the defendants), dismissing the complaint of Trista Auman, an 11–year-old child,

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

and her guardians, Kevin and Rhonda Auman (collectively, the plaintiffs). The circuit court concluded that the suit was barred by Wis. Stat. § 895.52, the recreational immunity statute. We reverse the order of the circuit court and remand the cause for further proceedings not inconsistent with this opinion.

¶ 2. The only question presented in this case is one of statutory interpretation: Is a school district immune from liability under Wisconsin's recreational immunity statute, Wis. Stat. § 895.52, for injuries a student suffered during a mandatory school recess period when the injuries were caused by the alleged negligent inspection and maintenance of a school playground and alleged negligent supervision of the student? We conclude that § 895.52 does not apply to the present case and a cause of action is stated when a student sustains injuries on a school playground during a mandatory school recess period as a result of the school district's negligence. Section 895.52 does not bar the suit because the student who is injured during a mandatory school recess period did not "enter" the school district's "property to engage in a recreational activity" as those words are used in § 895.52(2)(a).[2] Trista entered the school property for educational purposes as required by the state's compulsory school attendance and truancy laws.[3] Furthermore, her participation in recess activities was required as part of the

---

[2] Wisconsin Stat. § 895.52(2)(a) provides, inter alia, that no owner owes a duty of care "to any person who enters the owner's property to engage in a recreational activity." Section 895.52(2)(b) provides, inter alia, that no owner "is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property."

[3] Wisconsin Stat. § 118.15(1)(a), the compulsory school attendance law, provides:

school district's curriculum.[4] Therefore, Trista was not engaging in a recreational activity under the statute.

## I

¶ 3. For the purposes of summary judgment, the facts are not in dispute. Trista Auman, an 11–year-old child, broke her leg during a mandatory school recess period while sliding down a snow pile located on the school playground. According to Trista's deposition, she was running, jumping, and sliding on the snow pile because it was fun. Ms. Patricia LaMarche, a playground aide, stated that about three days before Trista was injured, the playground supervisors agreed that the snow pile presented a safety issue and that the children should not be allowed to play on it. Nevertheless, Ms.

Except as provided under pars. (b) to (d) and sub. (4), unless the child is excused under sub. (3) or has graduated from high school, any person having under control a child who is between the ages of 6 and 18 years shall cause the child to attend school regularly during the full period and hours, religious holidays excepted, that the public or private school in which the child should be enrolled is in session until the end of the school term, quarter or semester of the school year in which the child becomes 18 years of age.

Wisconsin Stat. § 118.16(1)(c) defines truancy as:

any absence of part or all of one or more days from school during which the school attendance officer, principal or teacher has not been notified of the legal cause of such absence by the parent or guardian of the absent pupil, and also means intermittent attendance carried on for the purpose of defeating the intent of § 118.15.

[4] The Stanley-Boyd Elementary Student Handbook states in relevant part:

All children are expected to go outdoors for play when the weather permits. It is the responsibility of the parent to see that the child comes to school properly dressed for the season of the year. We feel that if a child is well enough to come to school, he/she is well enough to go outdoors.

Diana Halterman, the playground supervisor on duty when Trista was injured, did not stop Trista from sliding on the snow pile.

¶ 4. The plaintiffs' complaint alleges that the school district negligently inspected and maintained its premises and failed to provide adequate supervision during the mandatory recess period. The defendants moved for summary judgment, claiming governmental immunity and recreational immunity. The circuit court denied summary judgment on the ground of governmental immunity and granted summary judgment in favor of the defendants on the ground that the recreational immunity statute barred the plaintiffs' claims.[5]

■

¶ 5. This court reviews the grant of summary judgment independent of the determination rendered by the circuit court, applying the same methodology as the circuit court. Summary judgment is appropriate if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[6] The parties agree that for purposes of the summary judgment the facts are not in dispute.

---

[5] The issue of governmental immunity was not raised by the parties on appeal and is not addressed by this court. The circuit court denied the defendants' motion for summary judgment on the ground of governmental immunity, concluding that whether the actions of the school district were discretionary and whether the accident in question represented a known danger were disputed issues of fact.

[6] Wis. Stat. § 802.08(2); *Meyer v. Sch. Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

## II

█

¶ 6. The issue presented in this case is one of statutory interpretation; we apply the statute to the undisputed facts. This court determines this question of law independent of the circuit court, but benefits from its analysis.

¶ 7. Section 895.52(2) of the statutes provides, in part, that a property owner does not owe to any person who enters the owner's property to engage in a recreational activity a duty to keep the property safe for recreational activities and is otherwise immune from liability for injuries to any person engaged in recreational activities on the owner's property.

¶ 8. Section 895.52(1)(g) of the statutes sets forth a three-part definition of recreational activity.[7] The first part of the section defines recreational activity as "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity." The second part of the statutory definition of recreational activity lists 29 specific activities denominated as recreational, including toboggan-

---

[7] Wisconsin Stat. § 895.52(1)(g) provides:

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature, sport shooting and any other outdoor sport, game or educational activity. "Recreational activity" does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

ing and sledding. The third part of the statutory definition broadly adds "and any other outdoor sport, game or educational activity."

¶ 9. It is immediately clear that sliding down a snow pile is not one of the activities listed in § 895.52(1)(g). The fact that Trista's activity is not a listed recreational activity does not determine whether the activity is a recreational activity under the statute. The legislature recognized that it would be impossible to list in the statute every recreational activity. The legislature therefore provided examples of the kinds of activities that are included as recreational activities. The legislature also expressed its intent that courts interpret the statutory definition of recreational activity to include those activities that are substantially similar to the listed activities or undertaken under substantially similar circumstances as the listed activities. Thus, the legislature inferentially excluded activities from the statutory definition that lack commonality with the listed activities.[8]

---

[8] *Linville v. City of Janesville,* 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994).

The legislature expressed its intent in 1983 Wis. Act 418, § 1, stating:

> The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides ·examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.

¶ 10. Sliding down a snow pile is, in the abstract, substantially similar to sledding and tobogganing, which are among the 29 listed activities in the statute at Wis. Stat. § 895.52(1)(g), and Trista stated she was "having fun." Sliding on the snow pile is an outdoor activity and is undertaken for pleasure. "With limited exception, all outdoor activities that children engage in during their idle hours might constitute a recreational activity under § 895.52(1)(g)."[9] That Trista's activity is similar to one of the listed recreational activities and that Trista was having fun does not end our inquiry to determine the application of the recreational immunity statute.

¶ 11. This court has wrestled with applying the recreational immunity statute to varied fact situations since its enactment. The line between recreational and non-recreational activities is difficult to draw under Wis. Stat. § 895.52, and the issue has been litigated with some frequency.[10] We continue to be frustrated in our efforts to state a test that can be applied easily because of the seeming lack of basic underlying principles in the statute.[11]

[9] *Minn. Fire & Cas. Ins. Co. v. Paper Recycling of La Crosse,* 2001 WI 64, ¶ 43, 244 Wis. 2d 290, 627 N.W.2d 527 (Bradley, J., concurring).

[10] *See, e.g., Minn. Fire,* 2001 WI 64; *Urban v. Grasser,* 2001 WI 63, 243 Wis. 2d 673, 627 N.W.2d 511; *Waters ex rel. Skow v. Pertzborn,* 2001 WI 62, 243 Wis. 2d 703, 627 N.W.2d 497; *Meyer,* 226 Wis. 2d 704; *Verdoljak v. Mosinee Paper Corp.,* 200 Wis. 2d 624, 547 N.W.2d 602 (1996); *Seivert v. Am. Family Mut. Ins. Co.,* 190 Wis. 2d 623, 528 N.W.2d 413 (1995); *Szarzynski v. YMCA,* 184 Wis. 2d 875, 517 N.W.2d 135 (1994); *Linville,* 184 Wis. 2d 705. *See also* cases cited in *Seivert,* 190 Wis. 2d at 627 n.2.

[11] *Urban,* 2001 WI 63 at ¶ 12.

¶ 12. We have recognized that each recreational immunity case poses an intensely fact-driven inquiry.[12] We have in previous cases stated the test to determine a recreational activity in a number of different, but similar, ways. We repeat the tests we have stated before. Although the injured person's subjective assessment of the activity is pertinent, it is not controlling.[13] A court must consider the nature of the property, the nature of the owner's activity, and the reason the injured person is on the property.[14] A court should consider the totality of circumstances surrounding the activity, including the intrinsic nature, purpose, and consequences of the activity.[15] A court should apply a reasonable person standard to determine whether the person entered the property to engage in a recreational activity.[16] Finally, a court should consider whether the activity in question was undertaken in circumstances substantially similar "to the circumstances of recreational activities set forth in the statute."[17]

¶ 13. In the present case it is helpful to consider the totality of the circumstances and whether the activity in question was undertaken in circumstances

---

[12] *Urban,* 2001 WI 63 at ¶ 12; *Verdoljak,* 200 Wis. 2d at 636.

[13] *Minn. Fire,* 2001 WI 64 at ¶¶ 21, 29.

[14] *Minn. Fire,* 2001 WI 64 at ¶ 23; *Urban,* 2001 WI 63 at ¶ 14; *Meyer,* 226 Wis. 2d at 712.

[15] *Minn. Fire,* 2001 WI 64 at ¶ 21; *Urban,* 2001 WI 63 at ¶ 13; *Meyer,* 226 Wis. 2d at 712; *Verdoljak,* 200 Wis. 2d 624; *Seivert,* 190 Wis. 2d at 631; *Linville,* 184 Wis. 2d 705.

[16] *Minn. Fire,* 2001 WI 64 at ¶ 21; *Meyer,* 226 Wis. 2d at 712.

[17] *Seivert,* 190 Wis. 2d at 630 (quoting 1983 Wis. Act 418, § 1); *Minn. Fire,* 2001 WI 64 at ¶ 20.

substantially similar to the circumstances of recreational activities set forth in Wis. Stat. § 895.52. Trista entered the school district's property to attend school for educational purposes in compliance with Wisconsin law. A critical circumstance is that the compulsory school attendance law requires that "any person having under control a child who is between the ages of 6 and 18 years shall cause the child to attend school regularly during the full period and hours."[18] An adult's failure to comply with the compulsory school attendance law subjects the adult to criminal penalties.[19] Children who do not attend school are truants and are also subject to penalties.[20] In addition, Trista's participation in recess was mandatory. The school district required Trista to participate in recess out of doors as a part of its curriculum. The circumstances surrounding Trista's sliding down the snow pile are not substantially similar to the circumstances of the voluntary recreational activities set forth in Wis. Stat. § 895.52(1)(g).

¶ 14. The defendants contend that Trista's sliding on the snow pile during recess at the Stanley-Boyd Elementary School falls within "educational activity" as that phrase is used in Wis. Stat. § 895.52(1)(g). But the context in which the term "educational activity" is used in § 895.52(1)(g) does not include the activities of an

---

[18] *See* Wis. Stat. § 118.15(1)(a) (entitled "Compulsory School Attendance").

[19] *See* Wis. Stat. § 118.15(5)(a); *State v. Pamela White,* 180 Wis. 2d 203, 509 N.W.2d 434 (1993) (mother convicted of misdemeanor for failing to take measures to assure the child's regular attendance at school in compliance with the compulsory education statute).

[20] *See* Wis. Stat. § 118.16(6)(a) (stating potential penalties to children for truancy).

elementary school student during a mandatory school recess period while attending school on a compulsory basis. An educational activity in the context of § 895.52(1)(g) refers to participation in an outdoor learning experience voluntarily entered into by the individual.

¶ 15. The defendants also argue that Trista's attendance at the Stanley-Boyd Elementary School where the injury occurred is not compulsory. They assert that only her attendance at some school is compulsory. We are not persuaded by this argument. The critical factor in the present case that renders her activity during recess as non-recreational under Wis. Stat. § 895.52 is that Trista's attendance at some school is mandatory, with adverse consequences for both Trista and her parents for Trista's failure to attend school.

¶ 16. When we apply the totality of the circumstances and the objectively reasonable person tests to determine whether Trista's activity is recreational under the statute, we conclude that the small part of Trista's school activity that could be considered "recreational" in ordinary parlance does not render her entering the school district's property as entering the property for the purposes of a recreational activity under the recreational immunity statute. Under the objective reasonable person test, not every outdoor activity is a recreational activity nor is every form of child's play a recreational activity under Wis. Stat. § 895.52.[21]

¶ 17. The defendants make a final argument. They rely on *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 464 N.W.2d 654 (1991), to support their claim of immunity. They contend that in *Ervin* the court recognized

_____

[21] *Minn. Fire,* 2001 WI 64 at ¶ 30.

that the legislature expressly intended to supplant the established common law by enacting § 895.52.[22]

¶ 18. In *Ervin,* two minors drowned while swimming at a municipal beach in the City of Kenosha. The City of Kenosha was not required to provide lifeguards, but nevertheless employed lifeguards. The City did not train the lifeguards in rescue techniques or emergency care. Ervin argued that the City of Kenosha was negligent in failing to train its lifeguards and that the lifeguards were negligent in performing their duties.[23]

¶ 19. The *Ervin* court recognized that applying the recreational immunity statute conflicted with the City of Kenosha's common-law duty to provide lifeguards in a non-negligent manner. Nonetheless, this court concluded that the City of Kenosha had immunity from liability under Wis. Stat. § 895.52 because the "legislature clearly expressed an intent to change conflicting common law" when it enacted the recreational immunity statute.[24]

¶ 20. The defendants seek to apply the same reasoning in the present case. They recognize that under common law, school districts and their employees owe schoolchildren a duty of reasonable care. They argue that Wis. Stat. § 895.52 clearly expresses the legislature's intent to supersede the conflicting common law regarding the duty of reasonable care. They further argue that schools want their students to go outside and

---

[22] The court in *Ervin* stated that, although the provisions of Wisconsin's recreational immunity statute conflict with established common-law rights of injured individuals, the statutorily granted immunity supersedes the common law. *See Ervin v. City of Kenosha,* 159 Wis. 2d 464, 476, 464 N.W.2d 654 (1991). *See also* 1983 Wis. Act 418, § 1.

[23] *See Ervin,* 159 Wis. 2d at 469–71.

[24] *See Ervin,* 159 Wis. 2d at 476.

play during recess, that immunity under § 895.52 encourages outdoor activity, and that a school district's liability for injuries sustained during recess could cause school districts to eliminate recess. Thus the defendants conclude that the legislature intended § 895.52 to apply in the present case and that § 895.52 trumps the common law when a schoolchild engages in outdoor recess.

¶ 21. We agree with the defendants that Wis. Stat. § 895.52 supplants the common law, but *Ervin* does not govern the present case. The facts of *Ervin* are unlike those in this case. In *Ervin,* the boys entered the beach owned by the City of Kenosha to swim at their leisure. The recreational immunity statute clearly identifies swimming as a recreational activity.[25] The boys' sole purpose in entering the City's property was to participate in a recreational activity listed in the statute.

¶ 22. In contrast to *Ervin,* Trista went to school for educational purposes in compliance with state law. Her participation in what is a "recreational activity" in common parlance during a mandatory school recess period does not convert the educational purpose of school attendance into a recreational activity under the statute. Furthermore, we are not persuaded, as the defendants argue, that the legislature intended Wis. Stat. § 895.52 to encourage a mandatory recess outside school buildings by giving school districts immunity from liability for an injury to a schoolchild. Recess is a long-standing school activity that predates the enactment of the recreational immunity statute. No reason exists to immunize school districts from liability for not exercising reasonable care in the maintenance of school

---

[25] Wis. Stat. § 895.52(1)(g).

facilities or supervision of schoolchildren during regular school hours. In earlier versions of the recreational immunity statute the legislature's focus was on owners opening their property for recreational purposes by removing the potential for liability. This focus on opening the property has apparently been de-emphasized by the legislature. The concept of opening the property for recreational purposes has only limited usefulness in applying § 895.52.[26] For the reasons set forth, we do not find *Ervin* persuasive authority in the present case.

¶ 23. Applying our established fact-specific test, we conclude that the defendants in this case are not immune from liability under the recreational immunity

---

[26] *Urban*, 2001 WI 63 at ¶ 12.

Prior to 1984, the legislative intent was different. Recreational immunity was created by § 29.68, ch. 89, Laws of 1963, which explained the statute as "relating to the limitations on liability of landowners who open private lands for recreational purposes." Although the legislature redefined the intended scope of the statute several times, it remained specific to "opened" property. *See Verdoljak,* 200 Wis. 2d at 633. The legislature repealed Wis. Stat. § 29.68 (1963) and enacted Wis. Stat. § 895.52 (1983). The 1983 statute no longer described the recreational immunity statute as limiting the liability of landowners who open private lands for recreational purposes and focused instead on limiting the liability of a landowner to a person who enters the owner's property to engage in a recreational activity. *See Verdoljak,* 200 Wis. 2d at 632–634.

This case once again demonstrates the need for the legislature to review this statute. *See* Wis. Stat. §§ 13.83(1)(c)1, 13.93(2)(d); *see also Minn. Fire,* 2001 WI 64 at ¶¶ 37–45 (Bradley, J., concurring, joined by Abrahamson, C.J.), ¶ 69 (Wilcox, J., dissenting); *Waters,* 2001 WI 62 at ¶¶ 52–53 (Abrahamson, C.J., concurring).

statute. We reverse the circuit court's order dismissing the complaint and remand the cause to the circuit court for further proceedings not inconsistent with this court's holding.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded to the circuit court.

¶ 24. JON P. WILCOX, J. *(concurring).* I agree with the majority's reasoning and holding in this case. I write separately only because I think that the majority has failed to discuss a particularly strong reason for not immunizing schools under the recreational immunity statute. Wis. Stat. § 120.12 (1999–2000)[1] provides in part:

> The school board of a common or union high school district shall:
>
> . . .
>
> (5) REPAIR OF SCHOOL BUILDINGS. Keep the school buildings and grounds in good repair, suitably equipped and in safe and sanitary condition at all times. The school board shall establish an annual building maintenance schedule.

Likewise, Wis. Stat. § 121.02(1)(i) provides that "[E]ach school board shall . . . [p]rovide safe and healthful facilities . . ." These two statutes demonstrate the legislature's support for upholding the duty of reasonable care for schools and school districts, and they bolster our refusal to immunize the school district from liability in the present situation.

¶ 25. These statutes, which direct schools and school districts to keep their property safe and health-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

ful, are in conflict with the recreational immunity statute, which would provide that the school, as a property owner, does not owe, "to any person who enters the [school's] property to engage in a recreational activity . . . [a] duty to keep the property safe for recreational activities . . . [a] duty to inspect the property, . . . [or a] duty to give warning of an unsafe condition, use or activity on the property." Wis. Stat. § 895.52(2).

¶ 26. When statutes conflict, we must attempt to reconcile them if possible. *Bingenheimer v. DHSS,* 129 Wis. 2d 100, 107–08, 383 N.W.2d 898 (1986). Here, the simplest and most obvious way to reconcile these statutes is to find, as the majority does, that the legislature could not have intended to consider mandatory recess a "recreational activity" under § 895.52, *see* Majority op. at ¶ 2, and that the recreational immunity statute therefore does not apply.

¶ 27. For the foregoing reasons, I respectfully concur.

¶ 28. I am authorized to state that Justice N. PATRICK CROOKS joins this concurrence.