**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 15, 2016**

# In the Court of Appeals of Georgia

A16A0945. THE MAYOR AND ALDERMEN OF THE CITY OF
    GARDEN CITY v. HARRIS et al.

ELLINGTON, Presiding Judge.

Willie and Kristy Harris, individually and on behalf of their minor daughter, Riley Harris, sued The Mayor and Aldermen of the City of Garden City, Georgia (the "City") seeking to recover damages arising from injuries Riley suffered when, while attending a youth football game at a stadium owned and operated by the City, she fell through the bleachers. The City moved for summary judgment on the grounds, inter alia, that it was immune from liability under the Recreational Property Act, OCGA § 51-3-20 et seq. (the "RPA"), because the stadium was available to the public for recreational purposes. The trial court denied the City's motion, finding that, because the stadium was not open to the general public at no charge, the RPA did not protect

the City from liability. This Court granted the City's application for leave to file an interlocutory appeal. For the reasons set forth below, we agree with the trial court and affirm.

> On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

 (Citation and punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (3) (779 SE2d 334) (2015).

So viewed, the record shows that on November 10, 2012, the Harris family, including Willie and Kristy Harris and their daughter, Riley, attended a youth football game at the Garden City Stadium, a facility owned and maintained by the City. The only entrance to the stadium, which was surrounded by a gate on which was placed a "no trespassing sign," was through a gate adjacent to the ticket booth. Spectators over the age of six were charged an admission fee in the amount of $2 for an adult and $1 for a student. The Harrises paid the fee for themselves and one of their older

children. As Riley and her sister were then six years old, they were admitted without charge.

During the game, Riley and her siblings left their seats on the upper section of the stadium's bleachers to visit the concession stand. Riley bought a pickle and walked back toward her seat. As she was walking across the bleachers, she slipped and fell between the bench seats and to ground below, suffering injury.

The Harrises, individually and on behalf of Riley, filed this personal injury action against the City asserting claims for premises liability, negligence, and negligence per se. The City moved for summary judgment on the ground that, among other things, it was shielded from liability by the RPA. The trial court denied the City's motion, but certified its order for immediate review.

The City contends that the trial court erred in ruling that the RPA did not bar the Harrises's claims. "The purpose of [the RPA] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." OCGA § 51-3-20. Under the RPA, except as provided in OCGA § 51-3-25, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition,

3

use, structure, or activity on the premises to persons entering for recreational purposes." OCGA § 51-3-22. Further, except as provided in OCGA § 51-3-25,

> an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

OCGA § 51-3-23. As relevant here, the charge exception to the RPA, OCGA § 51-3-25 (2), provides that "[n]othing in this article limits in any way any liability which otherwise exists . . . [f]or injury suffered in any case when the owner of land charges the person or persons who enter or go on the land for the recreational use thereof[.]"

Generally, "whether the RPA applies to limit the liability of the owner of a certain property at a certain time is a question of law for the trial court." (Punctuation and footnote omitted.) *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 267 (1) (606 SE2d 323) (2004). Here, the parties agree that the spectators at the football game, including the Harris family, were using the stadium for a recreational purpose within the meaning of the RPA. See *Spivey v. City of Baxley*, 210 Ga. App. 772, 774-775 (437 SE2d 623) (1993) (The RPA applied to spectators at an athletic event when

4

no admission charge was imposed.). At issue is whether the charge exception to the RPA, OCGA § 51-3-25 (2), nevertheless precluded application of the RPA under the facts of this case. The City contends that the charge exception applies only to a guest who is charged to enter the property and that, as it is undisputed that Riley was not assessed a fee to enter the stadium, the charge exception does not bar the City's immunity under the RPA. The City further contends that its collection of nominal fees from the other entrants was not a disqualifying charge for purposes of the RPA.

We first address whether the fee imposed by the City to access the stadium was a charge for purposes of the RPA. Under the RPA, a "charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." OCGA § 51-3-21 (1). Although the amount was nominal, the City nevertheless required members of the public to pay to enter the stadium, and so the fee imposed falls squarely within the statutory definition of a "charge." The City argues that its collection of "incidental revenue from the recreational area" does not deprive it of the protection of the RPA. While we have found that some fees paid by users of recreational property do not constitute a "charge" under the RPA, in those cases the payment of the fee was not, as here, a requirement for entry onto the facility where the injury occurred. See, e.g., *South Gwinnett Athletic Assn. v. Nash*, 220 Ga.

App. 116, 117-118 (1) (469 SE2d 276) (1996) (The RPA provided immunity from liability for injuries suffered by a person who entered a ballpark free of charge as a spectator. The charge exception did not apply as a result of the little league registration fee imposed by the defendant where the fee was used to provide teams the necessities of playing in the league, including uniforms and umpires, and so did not constitute an "admission price or fee" for entry onto the land.); *Quick v. Stone Mountain Mem. Assn.*, 204 Ga. App. 598, 599 (420 SE2d 36) (1992) (RPA provided immunity for appellant's claims as her "alleged injuries resulted from her general recreational usage of the park premises, for which no fee was charged, rather than from the use of any of the facilities for which a fee was charged.") (citation and punctuation omitted); *Hogue v. Stone Mountain Mem. Assn.*, 183 Ga. App. 378, 380 (1) (358 SE2d 852) (1987) (A fee for a permit to use a vehicle in the park was not an admission price for entry onto land and, therefore, not a charge for the recreational use of the park.). The City also argues that the fees it collected from use of the stadium were used to defray the maintenance cost of the facility, and that it was not in the business of recreation or entertainment. The charge exception, however, specifically contemplates that it applies when the owner charges for "the recreational use" of the land, without reference to whether the owner was in the business of

6

recreation or was otherwise seeking to profit from the fee. OCGA § 51-3-25. Accordingly, we find the City's reliance on authorities distinguishing between the commercial and recreational use of property, and which do not rely on the application of the charge exception to the RPA, to be unpersuasive. See, e.g., *Cedeno v. Lockwood, Inc.*, 250 Ga. 799, 801-802 (2) (301 SE2d 265) (1983), disapproved in part on other grounds, *Atlanta Comm. for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116, 118 (1) n. 3 (598 SE2d 471) (2004) ("[T]he fact that no fee is charged does not assure applicability of the [RPA]," such that, if the public is invited onto the property to further the business interests of the owner, such as the sale of food, merchandise, or services, the side benefit to the public in the form of recreation does not shield the owner from liability.). Rather, we conclude that the admission fee charged by the City for entrance into the stadium was a charge within the meaning of the RPA.

The City further contends that, because Riley entered the stadium without payment of an admission fee, it did not owe her a duty of care that is due an invitee or licensee. The City points out that, under the RPA, "an owner of land who either directly or indirectly invites or permits without charge *any person* to use the property for recreational purposes does not thereby . . . [c]onfer upon *such person* the legal

7

status of an invitee or licensee to whom a duty of care is owed." (Emphasis supplied.) OCGA § 51-3-23 (2). It follows, the City argues, the RPA was satisfied and immunized the City against the Harrises' claims.[1]

Notwithstanding the City's suggested construction of OCGA § 51-3-23 (2), an owner is not entitled under the RPA to immunity from liability "[f]or injury suffered

[1] Even if OCGA § 51-3-23 was not subject to OCGA § 51-3-25, we would find the City's reading of OCGA § 51-3-23 to be unpersuasive. The City argues that the Legislature, by use of the words "any person" in the opening paragraph of OCGA § 51-3-23, and "such person" and "such persons," in Subsections (2) and (3), respectively, tied the reduction in liability afforded to the landowner to the individual person permitted onto the premises without charge. However, the statute provides benefits to the landowner not only under Subsection (2) and (3), but under Subsection (1), so that "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby . . . (1) Extend any assurance that the premises are safe for any purpose[.]" OCGA § 51-3-23 (1). Thus, Subsection (1) provides a broad reduction in liability that is not limited to any specific person. If "any person," for purposes of OCGA § 51-3-23, refers to an individual person, then by offering free admission to a subset of persons invited on the property the landowner would be entitled to the protections of OCGA § 51-3-23 (1) regardless of whether the injured party paid or did not pay for admission. The City's suggested interpretation of OCGA § 51-3-23 runs afoul of the rules of construction which require us to avoid creating a contradiction or absurdity when construing a statute. See, e.g., *Judicial Council of Ga. v. Brown and Gallo, LLC*, 288 Ga. 294, 297 (702 SE2d 894) (2010) ("[T]he golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else.") (citation and punctuation omitted).

8

*in any case* when the owner of land charges the person *or persons* who enter or go on the land for the recreational use thereof[.]" (Emphasis supplied.) OCGA § 51-3-25 (2). Thus, "[a]s a *prerequisite* to immunity under the RPA, the owner cannot charge a fee for admission to the property." (Emphasis supplied.) *Cedeno v. Lockwood, Inc.*, 250 Ga. at 801 (2) (citing OCGA § 51-3-25). In other words, "the RPA applies where the property is open to the public for recreational purposes and the owner does not charge an admission fee." (Citation omitted.) *Gayle v. Frank Callen Boys & Girls Club*, 322 Ga. App. 412, 414 (745 SE2d 695) (2013). See *Martin v. Dempsey Funeral Svcs.. of Ga., Inc.*, 319 Ga. App. 343, 345 (1) (735 SE2d 59) (2012) ("By its plain terms, the RPA requires that the property be used for recreational purposes without charge.") (citation omitted); *Edmondson v. Brooks County Bd. of Educ.*, 205 Ga. App. 662 (423 SE2d 413) (1992) ("The [RPA] applies if the landowner does not charge a fee for admission and if the property is open to the public for recreational purposes") (citation omitted).

Here, notwithstanding that the City chose not to charge very young children, including Riley, to enter the facility, the stadium was not open to the public without charge. Accordingly, we conclude that the trial court correctly denied the City's motion for summary judgment.

*Judgment affirmed. Branch and Mercier, JJ., concur.*